UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THEODORE HARRIS,                                  Case No. 12-10387

        Plaintiff,                              Thomas L. Ludington
v.                                                United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                  Michael Hluchaniuk
                                                  United States Magistrate Judge

        Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 16)

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On January 20, 2012, plaintiff Theodore Harris filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1 (b)(3), District Judge Thomas L. Ludington referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability and disability insurance benefits.  (Dkt. 2).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 12, 16).  Plaintiff also filed a response to defendant's motion for summary judgment.  (Dkt. 19).

### B.    Administrative Proceedings

Plaintiff filed the instant claim for disability insurance benefits on October

1

22, 2009, alleging that he was disabled on October 16, 2009. (Dkt. 8-5, Pg ID 129-30). The claim was initially disapproved by the state agency responsible for making disability determinations on behalf of the Commissioner on January 16, 2010. (Dkt. 8-3, Pg ID 92). Plaintiff requested a hearing and on December 15, 2010, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Anthony R. Smereka, who considered the case *de novo*. (Dkt. 8-2, Pg ID 58-90). In a decision dated March 11, 2011, the ALJ found that plaintiff was not disabled. (Dkt. 8-2, Pg ID 42-53). Plaintiff requested a review of that decision, and the ALJ's decision became the final decision of the Commissioner when, after review of additional exhibits (Dkt. 8-2, Pg ID 29-30),[1] the Appeals Council, on December 13, 2011, denied plaintiff's request for review. (Dkt. 8-2, PG ID 26-30); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's

---

[1]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

motion for summary judgment be **DENIED**, that the findings of the Commissioner

be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 48 years of age at the time of the administrative hearing.  (Dkt.

8-2, Pg ID 52).  Plaintiff's relevant work history included work as an automotive

mechanic.  (Dkt. 8-6, Pg ID 172).  In denying plaintiff's claims, defendant

Commissioner considered arterial sclerotic heart disease, status post myocardial

infarctions; hypercholesterolemia; insulin dependent diabetes mellitus with

diabetic nephropathy, renal insufficiency, and stage II kidney disease; possible left

rotator cuff tear; substance abuse, in remission; chronic obstructive pulmonary

disease with history of smoking; gastroparesis; esophageal reflux; herniation with

stenosis of L5-S1 with a history of L5-S1 laminectomy; and hypertension,

controlled.  (Dkt. 8-2, Pg DI 47).

The ALJ applied that five-step disability analysis to plaintiff's claim and

found at step one that plaintiff had not engaged in substantial gainful activity since

October 16, 2009 through his date last insured of September 30, 2010.  (Dkt. 8-2,

Pg ID 47).  At step two, the ALJ found that plaintiff's arterial sclerotic heart

disease, status post myocardial infarctions; hypercholesterolemia; insulin

dependent diabetes mellitus with diabetic nephropathy, renal insufficiency, and

stage II kidney disease; possible left rotator cuff tear; substance abuse, in

remission; chronic obstructive pulmonary disease with history of smoking;

gastroparesis; esophageal reflux; and herniation with stenosis of L5-S1 with a

history of L5-S1 laminectomy were "severe" within the meaning of the second

sequential step, and that plaintiff's hypertension, which is controlled, was "non-

severe." *Id.* At step three, the ALJ found no evidence that plaintiff's combination

of impairments met or equaled one of the listings in the regulations. (Dkt. 8-2, Pg

ID 48). The ALJ found that plaintiff has the residual functional capacity ("RFC")

"to perform light work . . . except that he cannot climb ladders, ropes, or scaffolds.

He also cannot crawl, or do work requiring raising the left non-dominant upper

extremity over the shoulder. He is restricted from work at unprotected heights,

must work in a relatively clean air environment, and be permitted a sit/stand

option." *Id.* At step four, the ALJ found plaintiff unable to perform his past

relevant work as an auto mechanic because that job was skilled and performed at

the medium exertional level. (Dkt. 8-2, PG ID 51-52). At step five, the ALJ

denied plaintiff benefits because plaintiff could perform a significant number of

jobs available in the national economy. (Dkt. 8-2, Pg ID 52-53).

### B.    Plaintiff's Claims of Error

Plaintiff first argues that there is no evidence that any state agency medical

consultant ever reviewed any of the medical evidence and that instead this case was

4

reviewed by a "Single Decision Maker," Shannon E. Smith, a layperson who completed the only residual functional capacity ("RFC") assessment in the record. The ALJ summarily determined that Listing 1.04, addressing disorders of the spine, was not met in this case, but failed to address whether that listing was medically equaled as required.[2]  However, plaintiff's treating physician, Marybeth Knight, D.O., an internist, opined that plaintiff met Listing 1.04, and the ALJ failed to address this opinion or provide good reasons for rejecting it.  Thus, plaintiff argued, this case should be remanded for an award of benefits, or, alternatively, remanded with instructions to obtain medical expert testimony regarding whether Listing 1.04 is met or medically equaled.

Plaintiff next argues that the ALJ improperly failed to give controlling weight to the opinions of his treating physician, Dr. Knight, and failed to give sufficiently good reasons for doing so.  Dr. Knight treated plaintiff from April 2007 through the date of the hearing, reviewed nearly every page of the medical evidence of record, was the attending or referring physician during each of plaintiff's multiple hospitalizations and was copied on all of those records as well, and completed an RFC assessment opining that plaintiff cannot perform the

---

[2]In addition to Listing 1.04, the ALJ also considered the following Listings and found that they are not met: 9.08 diabetes mellitus; 3.02 chronic pulmonary insufficiency; 5.00 digestive system impairments; 1.02 major dysfunction of a joint; and 4.00 cardiovascular system impairments.  (Dkt. 8-2, Pg ID 48).  Plaintiff, however, only complains that the ALJ erred regarding Listing 1.04.

minimal demands of sedentary work.  Specifically, Dr. Knight completed a series of questionnaires in December 2010 in which she listed plaintiff's diagnoses as unspecified hypertension, gastroparesis, esophageal reflux, renal insufficiency, arteriosclerotic heart disease, hypercholesterolemia, diabetes mellitus Type II, and shoulder pain.  (Dkt. 8-8, Pg ID 249-57).  Dr. Knight reported that plaintiff has complained of "severe" pain and weakness or fatigue and opined that plaintiff has been impaired with a disorder of the spine since February 2009 and that plaintiff's impairment is lifelong.  *Id.*  Dr. Knight opined that plaintiff can sit, stand and walk for less than one hour in an eight hour workday because of his "spinal impairment," fatigue and pain, lift no more than five pounds, cannot push or pull controls with his arms or legs, and that plaintiff requires complete freedom to rest frequently without restriction during the workday.  *Id.*  Plaintiff contends that if the ALJ had properly credited Dr. Knight's opinion, he would have found plaintiff disabled, and that the ALJ's stated reason for not doing so–because "the treating records from Dr. Knight, and the medical evidence as a whole do not support the degree of limitations found by Dr. Knight[, t]herefore her opinion is not given significant weight in its entirety"–are inadequate as a matter of law.

Plaintiff also argues that the ALJ's RFC is not supported by medical evidence because the ALJ rejected Dr. Knight's RFC and Dr. Knight was the only medical source to render any opinion regarding plaintiff's functional limitations.

The State Agency RFC Assessment was completed by a layperson Single Decision Maker, (Dkt. 8-7, Pg ID 239-46), and thus the ALJ improperly "took on the role of medical expert in this case and translated the raw medical data into functional limitations."   Plaintiff cites several cases as requiring the ALJ to at least seek the advice of a medical examiner regarding the claimant's functional limitations to assist in determining the claimant's RFC.  *See Porzondek v. Sec'y of Health & Human Servs.*, 1993 WL 15135, at *2 (6th Cir. Jan. 22, 1993); *Thompson v. Comm'r of Soc. Sec.*, 2011 WL 766668, at *8 (W.D. Mich. Feb. 4, 2011); *Ripley v. Chater*, 67 F.3d 552, 557-58 (5th Cir. 1995); *Rivera-Figueroa v. Sec'y of Health & Human Servs.*, 858 F.2d 48, 52 (1st Cir. 1988).

Plaintiff further contends that the ALJ erred by failing to fully credit his testimony, which is supported by the medical evidence of record, including records from Dr. Knight and Dr. Abigail Neal, who performed a physical consultative examination of plaintiff on December 15, 2009 (Dkt. 8-8, Pg ID 234-38), as well as a March 2010 MRI.  Plaintiff argues that the ALJ improperly noted that plaintiff did not appear to be in pain during the 39 minute hearing.

Finally, plaintiff argues the ALJ's finding that there is other work in the national economy plaintiff can perform is not supported by substantial evidence. Plaintiff contends that the hypothetical posed by the ALJ to the vocational expert ("VE") failed to include the functional limitations supported by the record because

there is no support for the ALJ's RFC finding that plaintiff could perform light work and the ALJ failed to include plaintiff's credible testimony that he could not sit, stand or walk for an eight-hour workday due to back and leg pain.  Plaintiff further states that the ALJ failed to ask the VE whether her testimony was consistent with the Dictionary of Occupational Titles ("DOT"), as required. Plaintiff contends that the VE's testimony is in fact not consistent with the DOT because the job of hand packer is listed as a medium job and entails working in extreme heat and constant reaching, which is inconsistent with the ALJ's RFC. Further, the VE's testimony that an individual who requires a sit/stand option could perform any light or sedentary job is also inconsistent with the DOT, which does not address a sit/stand option.

C.     **The Commissioner's Motion for Summary Judgment**

According to the Commissioner, the ALJ's finding that plaintiff could perform a reduced range of work is supported by substantial evidence.  The limitation to light work accommodated plaintiff's back pain, heart problems and COPD.  The sit/stand restriction accommodated plaintiff's diabetes and diabetic neuropathy, as did the restrictions on climbing ladders, ropes or scaffolds, crawling and working at unprotected heights.  The ALJ restricted plaintiff to working in a clean air environment to accommodate his COPD, and restricted plaintiff from engaging in work that required raising his left arm above his shoulder to

8

accommodate his possible left rotator cuff tear.  The ALJ properly noted that chest x-rays taken in March and June 2010 were normal (Dkt. 8-2, Pg ID 49; Dkt. 8-8, Pg ID 305, 308), and that the medical records did not corroborate plaintiff's complaint of chest pains.  (Dkt. 8-2, Pg ID 49; Dkt. 8-8 Pg ID 314).  Further, plaintiff has diabetes, but his blood sugars were "relatively well controlled."  (Dkt. 8-2, Pg ID 50; Dkt. 8-8, Pg ID 277).  Moreover, plaintiff denied chest pain, palpitations, nausea, shortness of breath, and dizziness in May 2010.  (Dkt. 8-8, Pg ID 277).

As for plaintiff's complaints of back pain and impairments, the ALJ noted that radiological studies suggested that plaintiff's disc herniation did not worsen significantly over time (Dkt. 8-2, Pg ID 50; Dkt. 8-8, Pg ID 317-18), and the ALJ noted that plaintiff was able to sit throughout the hearing without any noticeable sign of pain.  (Dkt. 8-2, Pg ID 50). The ALJ also cited Dr. Neal's consultative examination findings, acknowledging that Dr. Neal noted impairments of poorly controlled blood sugar, reports of chest pain, and left shoulder pain due to rotator cuff tear that required surgical management, but noted that the doctor reached these conclusions largely by relying on plaintiff's self-reported history and that much of the doctor's examination supported the ALJ's determination that plaintiff could perform a limited range of light work.  (Dkt. 8-2, Pg ID 51; Dkt. 8-8, Pg ID 234-36).

In response to plaintiff's argument that the ALJ's RFC assessment is improper because no medical source made a similar, corroborating finding, the Commissioner argues that there is no authority that an ALJ is required to adopt a specific RFC assessment from a medical source, citing *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999) ("If a claimant does not secure an official 'Residual Functional Capacity' assessment by a medical or psychological examiner, and simply relies on other evidence to prove his impairments, it does not follow that the Commissioner subsequently must provide the RFC assessment at step five."). The ALJ thus properly made his RFC finding by reviewing the medical evidence plaintiff submitted.

The Commissioner also argues that plaintiff overstates the extent to which the ALJ discounted Dr. Knight's opinion. Although the ALJ did not adopt Dr. Knight's opinions wholesale, the ALJ explained that Dr. Knight's own treatment notes and other medical evidence of record did not support Dr. Knight's opinion as to plaintiff's functional limitations. The medical records included normal chest x-rays, radiological studies showing little if any worsening in plaintiff's disc herniation, normal heart rate and rhythm, breathing clear of wheezing or rhonchi, controlled hypertension and blood sugar levels, and no carotid bruits. (Dkt. 8-8, Pg ID 260-74, 277-78, 298-99, 301-03). Dr. Majid Qazi, plaintiff's cardiologist, reported in March 2010 that plaintiff "feels great" since quitting smoking and

"feels much more energetic" and "has been very active without symptoms," (Dkt 8-8, Pg ID 314), and Dr. Neal noted that plaintiff reported being able to drive himself to the examination, her findings corroborated Dr. Knight's findings of clear lungs with no wheezes, rales or rhonchi and regular heart rate and rhythm, plaintiff had full strength in his upper and lower extremities, straight leg raise testing was negative, and plaintiff could walk on his heels and tip toes, had a normal gait and could squat one-quarter of the way and stand back up. (Dkt. 8-8, Pg ID 234-36).

The Commissioner also argues that the ALJ properly assessed plaintiff's credibility. The ALJ properly noted inconsistencies between plaintiff's testimony and the medical record evidence, including that while plaintiff complained of chest pains, the record evidence contained little documentation of such pains, and plaintiff reported to Dr. Qazi that he did not have chest discomfort, pressure or tightness. (Dkt. 8-2, Pg ID 49; Dkt. 8-8, Pg ID 314). Plaintiff's "post hoc" explanation in his motion that he only meant that he did not have such complaints *during the examination* when he was at rest does not make sense. The ALJ also properly considered that the fact that plaintiff could sit during the hearing without pain and could drive himself to a doctor's appointment was inconsistent with plaintiff's claim that he cannot sit for more than five minutes, citing 20 C.F.R. § 404.1529(c)(3)(I) and *Heston v. Commissioner of Social Security*, 245 F.3d 528,

11

536 (6th Cir. 2001) ("The ALJ could properly determine that [the claimant's] subjective complaints were not credible in light of her ability to perform other tasks.").

The Commissioner further contends that the ALJ properly found, at step three of the sequential analysis, that plaintiff did not meet or equal a listing, which requires only a minimal articulation by the ALJ.  Further, plaintiff's argument that the case should be remanded because a layperson single decisionmaker reviewed plaintiff's records, and not a medical expert, fails because the issue of whether an impairment medically equals a listing is an issue reserved to the Commissioner and if plaintiff believed that a medical source opinion was needed on this issue, he should have provided one because he bore the burden of proof at this stage of the sequential analysis.

Finally, the Commissioner argues that the ALJ properly relied on the VE's testimony because the hypothetical question posed to the VE was based on the ALJ's RFC, which is supported by substantial evidence.  Further, the ALJ did properly elicit testimony from the VE that her testimony was consistent with the DOT:

> Q.  Do you understand that if you give us an opinion which conflicts with the information in the Dictionary of Occupational Titles, that you need to advise us of the conflict and provide the basis for your opinion?
>
> A.  Yes, your honor.

(Dkt. 8-2, Pg ID 82).  The VE never testified that her opinion conflicted with the DOT, and plaintiff's attorney had an opportunity to cross-examine the VE, but declined to do so.  (Dkt. 8-2, Pg ID 87).  Further, plaintiff's attorney gave a closing statement but did not mention any shortcoming in the VE's testimony. The ALJ thus properly relied on the VE's testimony.

### D.    Plaintiff's Response Brief

Plaintiff responds to the Commissioner by arguing that the ALJ's conclusory statement that plaintiff's impairments do not meet or equal a listing should be rejected because an ALJ must do more than simply announce that a listing has not been met or equaled.  Social Security Ruling ("SSR") 96-5p recognizes that a treating source is usually the best source of documentation regarding whether a claimant's impairment meets the requirements of a listed impairment.  Further, SSR 96-6p acknowledges that "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight."  The ALJ failed to comply with this Ruling, and the case should be remanded.

Plaintiff also argues that the Commissioner failed to show that the ALJ assigned proper weight to Dr. Knight's opinions, or that the ALJ properly

explained why those opinions are not entitled to controlling weight.  The ALJ's summarization and vague pronouncements do not equal analysis, and the ALJ was not entitled to "cherry pick" or selectively cite the record.  Plaintiff argues further that the ALJ's RFC finding is flawed because the ALJ substituted his own medical judgment for that of a physician, and the record lacked any detailed functional assessment, other than that from Dr. Knight which the ALJ largely rejected.  Plaintiff contends that the ALJ should have sought a competing assessment prior to rejecting the treating physician's opinion and formulating his own medical judgment about the effects of plaintiff's impairments and the meaning of the medical findings and data.

Plaintiff also argues that the Commissioner fails to demonstrate that the ALJ's credibility assessment is proper because even a temporary improvement in plaintiff's chest pain, as noted by Dr. Qazi, would not equate to an ability to engage in the exertions required of sustained competitive work.  And, the ALJ's "sit and squirm" observation that plaintiff was able to sit for the 39-minute hearing without obvious signs of pain is too minor of an inconsistency to support rejection of plaintiff's complaints.  Finally, plaintiff re-argues that the ALJ's hypothetical posed to the VE, based on his flawed RFC, cannot constitute substantial evidence to support the ALJ's finding of the existence of other work in the national economy that plaintiff can perform.

14

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

15

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v.*

16

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

     The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of

Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either

the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the
Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et
seq*.).  Title II benefits are available to qualifying wage earners who become
disabled prior to the expiration of their insured status; Title XVI benefits are
available to poverty stricken adults and children who become disabled.  F. Bloch,
Federal Disability Law and Practice § 1.1 (1984).  While the two programs have
different eligibility requirements, "DIB and SSI are available only for those who
have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).
"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### C.    Analysis and Conclusions

#### 1.    Lack of state agency medical expert opinion evidence

According to the plaintiff, the ALJ erred when he rendered a step three

20

determination that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment that was not supported by medical evidence.  However, according to the Commissioner, there is no requirement for the ALJ to obtain an opinion from a medical consultant because ultimately, the determination of the RFC is the ALJ's province.  The undersigned finds that the lack of an expert medical opinion on the issue of equivalency is problematic and violated the requirements of SSR 96-6p.

In this case, the single decisionmaker ("SDM") model was used pursuant to 20 C.F.R. §§ 404.1406(b)(2), 404.906(b)(2).  This regulation provides streamlined procedures as an experiment, in which State Agency disability examiners may decide cases without documenting medical opinions from State Agency medical consultants.  The "single decisionmaker model" was an experimental modification of the disability determination process that happens to have been used in Michigan. *See Covey v. Comm'r of Soc. Sec.*, 2013 WL 462066, at *10 (E.D. Mich. Jan. 16, 2013), *adopted by* 2013 WL 461535 (E.D. Mich. Feb. 7, 2013) (citation omitted). This experiment eliminated the reconsideration level of review and allowed claims to go straight from initial denial to ALJ hearing.  *Id.*  Most significantly, it allowed the state agency employee (the single decisionmaker) to render the initial denial of benefits without documenting medical opinions from the state agency medical consultants.  *Id.*

The Programs Operations Manual System ("POMS") requires that it "be clear to the appeal-level adjudicator when the SSA-4734-BK [the PRFC assessment form] was completed by an SDM because SDM-completed forms are not opinion evidence at the appeal levels." POMS DI § 24510.05. In this case, there was a "Disability Determination Transmittal" form and a "Physical Residual Functional Capacity Assessment" ("PFRCA") completed by an SDM, Shannon E. Smith. (Dkt. 8-3, Pg ID 92; Dkt. 8-7, Pg ID 239-46). Thus, no medical opinion was obtained at this level of review, in accordance with the model.

While the ALJ did not expressly rely on the opinions of the SDM, which would have been wholly improper, the lack of any medical opinion on the issue of equivalence is still an error requiring remand. As recognized in *Stratton v. Astrue*, — F. Supp.2d —, 2012 WL 1852084 (D.N.H. 2012), SSR 96-6p describes the process by which ALJs are to make step-three determinations:

> The administrative law judge ... is responsible for deciding the ultimate legal question whether a listing is met or equaled. As trier of the facts, an administrative law judge ... is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments. However, *longstanding policy requires that the judgment of a physician* (or psychologist) designated by the Commissioner *on the issue of equivalence on the evidence* before the administrative law judge ... *must be received into the record as expert opinion evidence and given appropriate weight.*

22

*Stratton*, 2012 WL 1852084, at *11-12 (quoting SSR 96-6p) (emphasis added); *see also Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)); *Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. Oct. 12, 2011) (warning that an ALJ who makes a step-three equivalence determination without expert-opinion evidence runs the risk of impermissibly playing doctor).

The *Stratton* court further explained that SSR 96-6p treats equivalence determinations differently from determinations as to whether an impairment meets a listing, requiring expert evidence for the former, but not the latter. *Stratton,* 2012 WL 1852084 at *12 (citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. May 23, 2008) ("The basic principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to determine whether a claimant's ailments meet the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings.") (citation and quotation marks omitted)). This expert opinion requirement can be satisfied by a signature on the Disability Determination Transmittal Form. *Id.* (citing SSR 96-6p) (The expert-

23

opinion evidence required by SSR 96-6p can take many forms, including "[t]he

signature of a State agency medical ... consultant on an SSA-831- U5 (Disability

Determination and Transmittal Form)."); *Field v. Barnhart*, 2006 WL 549305, at

*3 (D. Me. Mar. 6, 2006) ("The Record contains a Disability Determination and

Transmittal Form signed by Iver C. Nielson, M.D. .... discharging the

commissioner's basic duty to obtain medical-expert advice concerning the Listings

question."), *adopted by* 2006 WL 839494 (D. Me. Mar. 30, 2006).

In this case, there is no such signature on the Disability Determination

Transmittal Form or the PRFCA form. (Dkt. 8-3, Pg ID 85).  The great weight of

authority[3] holds that a record lacking any medical advisor opinion on equivalency

requires a remand.  *Stratton*, 2012 WL 1852084 at *13 (collecting cases); *see e.g.*

*Caine v. Astrue*, 2010 WL 2102826, at *8 (W.D. Wash. Apr. 14, 2010) (directing

ALJ to obtain expert-opinion evidence on equivalence where none was in the

record), *adopted by* 2010 WL 2103637 (W.D. Wash. May 25, 2010); *Wadsworth v.*

*Astrue*, 2008 WL 2857326, at *7 (S.D. Ind. July 21, 2008) (holding that where

record included no expert-opinion evidence on equivalence, "[t]he ALJ erred in not

---

[3]In *Stratton*, the court noted that a decision from Maine "stands alone" in
determining that 20 C.F.R. § 404.906(b) "altered the longstanding policy that an
ALJ is required to seek a medical opinion on the issue of equivalence." *Stratton*,
2012 WL 1852084 at *12 (citing *Goupil v. Barnhart*, 2003 WL 22466164, at *2
n.3 (D. Me. Oct. 31, 2003)).

seeking the opinion of a medical advisor as to whether Mr. Wadsworth's impairments equaled a listing"). While courts in this district have concluded that the ALJ need not obtain expert opinion evidence in cases involving an SDM in other cases, *see Gallagher v. Comm'r of Soc. Sec.*, 2011 WL 3841632 (E.D. Mich. Mar. 29, 2011), *adopted by* 2011 WL 3841629 (E.D. Mich. Aug. 30, 2011) and *Timm v. Comm'r of Soc. Sec.*, 2011 WL 846059 (E.D. Mich. Feb. 14, 2011), *adopted by* 2011 WL 845950 (E.D. Mich. Mar. 8, 2011), the undersigned does not find these cases persuasive.  In both cases, the court concluded that because the regulations permitted an SDM to make a disability determination without a medical consultant that the ALJ is, therefore, also permitted to do so where the "single decisionmaker" model is in use. However, nothing about the SDM model changes the ALJ's obligations in the equivalency analysis. *See Barnett*, 381 F.3d at 670 ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ *must* consider an expert's opinion on the issue.") (emphasis added, citing 20 C.F.R. § 1526(b)); *Retka*, 1995 WL 697215, at *2 ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)).  Based on the foregoing, the undersigned cannot conclude that the ALJ's obligation to consult a medical expert in making an equivalency determination is any different in a case where the SDM model is used. While the SDM is not required to obtain a medical opinion in cases involving

physical impairment, as noted in *Timm* and *Gallagher*, nothing appears to have modified *the ALJ's* obligations and it makes little sense to conclude that the ALJ is relieved from obtaining an expert medical opinion in SDM cases. Thus, the undersigned's analysis does not alter the SDM model, which leaves the SDM discretion as to whether a medical expert is consulted as to physical impairments. Rather, the undersigned's analysis leaves intact the requirements imposed on an ALJ in making an equivalency determination, which does not otherwise appear to be modified by the SDM model. *See also Covey*, 2013 WL 462066, at *13 (remanding matter so ALJ can obtain the opinion of a qualified medical advisor on the issue of equivalence); *Maynard v. Astrue*, 2012 WL 5471150 (E.D. Mich. Nov. 9, 2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence.").

While there is support for the proposition that such an error can be harmless and the undersigned is not necessarily convinced that plaintiff can show that his physical impairments satisfy the equivalency requirements, "[n]either the ALJ nor this court possesses the requisite medical expertise to determine if [plaintiff]'s impairments ... in combination equal one of the Commissioner's listings." *Freeman v. Astrue*, 2012 WL 384838, at *4 (E.D. Wash. Feb. 6, 2012). For these reasons, the undersigned concludes that this matter must be remanded so that the ALJ can obtain the opinion of a qualified medical advisor on the issue of equivalence. In

addition, given these conclusions, plaintiff's credibility will necessarily require reevaluation.

### 2.   Plaintiff's remaining arguments

Because this case is being remanded for the reasons set forth above, there is no need to fully discuss plaintiff's remaining arguments.  Even so, because the issues plaintiff raises are likely to arise on remand, the court addresses them briefly.

### a.   Treating physician opinion

Plaintiff contends that the ALJ did not give proper weight to the opinion of Dr. Knight that plaintiff could not perform gainful activity.  The ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians.  SSR 96-2p, 1996 WL 3674188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  A presumption exists that the opinion of a treating physician is entitled to great deference.  *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).  If that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's condition is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record."  *Wilson*, 378 F.3d at 544.  When an ALJ

determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p.

However, "[t]he determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner*, 375 F.3d at 390 (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). "When a treating physician . . . submits an opinion on an issue reserved to the Commissioner–such as whether the claimant is 'disabled' or 'unable to work'–the opinion is not entitled to any particular weight." *Turner v. Comm'r of Soc. Sec.*, 2010 WL 2294531, at *4 (6th Cir. June 7, 2010). "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Id.* (internal quotation and citation omitted). In *Turner*, the Sixth Circuit held that the ALJ adequately addressed a treating physician's opinion that plaintiff was "unable to work" and was not "currently capable of a full-time 8-hour workload" when the ALJ stated that it was an opinion on an issue reserved for the Commissioner. *Id.* at *5.

28

As to the ALJ's treatment of Dr. Knight's opinion, the undersigned concludes that the ALJ properly did not give her opinion as to plaintiff's functional limitations controlling weight.  There is virtually no support in Dr. Knight's office notes and records supporting the severe limitations imposed on plaintiff and there is little objective medical evidence, test results, etc. to support her full opinion.  Rather, Dr. Knight and plaintiff appear to conclude that simply because plaintiff suffers from a certain condition or carries a certain diagnoses, he is disabled.  However, a diagnosis or condition does not equate to a disability or a particular RFC.  Rather, the RFC circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from–though the maladies will certainly inform the ALJ's conclusions about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).  "A claimant's severe impairment may or may not affect his or her functional capacity to do work.  One does not necessarily establish the other."  *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004).  "The regulations recognized that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms."  *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007).  Thus, the mere existence of any condition from which plaintiff may have suffered does not necessarily establish any functional limitation or disability.

29

The ALJ recognized that plaintiff's treating physician, Dr. Knight, opined that plaintiff can sit for less than an hour, stand or walk for less than an hour, and occasionally lift up to five pounds, requires a period to lie down/rest during the workday at will, and should not be sitting for prolonged periods due to back pain and fatigue, but also noted that Dr. Knight's treating records, and the medical evidence as a whole, do not support the degree of limitations found by Dr. Knight. (Dkt. 8-2, Pg ID 51).  Indeed, the record evidence generally revealed that although plaintiff does have a history of myocardial infarction and he reported chest pain leading to hospitalization in October 2009 and March 2010, regular examinations through December 2010 were negative for ongoing chest pain, pressure, discomfort, edema, shortness of breath, or irregular heartbeat/palpitations, and negative for tiredness, fatigue, fever and nightsweats, (Dkt. 8-8, Pg ID 260-74, 277-78, 298-99, 301-03), and plaintiff reported to his cardiologist in March 2010 that he "feels great" since quitting smoking and "feels much more energetic and has been very active without symptoms." (Dkt. 8-8, Pg ID 301-02).  Notably, the ALJ advised plaintiff and his attorney at the hearing that he would allow additional time for plaintiff to obtain any record or statement from Dr. Qazi to support plaintiff's complaint of ongoing chest pain, and plaintiff's attorney indicated that the record should be closed.  (Dkt. 8-2, Pg ID 49, 81).

The ALJ also determined that the record does not fully support Dr. Knight's

opinion regarding the limitations from plaintiff's claimed back injury.  Dr.

Knight's records only reveal a complaint from plaintiff about back pain on

September 29, 2010, and that plaintiff "is to follow-up with Dr. Bono for epidural

injections" on December 8, 2010 (Dkt. 8-8, Pg ID 260, 263-66), but otherwise fail

to record any similar complaints of back pain.  (Dkt. 8-8, Pg ID 260-62, 267-74).

The ALJ noted that a 2003 treatment note from Dr. Robert O. Pierce, D.O.,

indicated that plaintiff had reported improvement in his lower extremity strength

and "some benefit" from epidural injections.  (Dkt. 8-2, Pg ID 50; Dkt. 8-7, Pg ID

182-83).  An October 6, 2010 MRI noted that plaintiff has a disc herniation at both

L4-5 and S1, but that when compared to the prior study of July 27, 2002, the

"findings have not changed significantly, although the disc herniation and resultant

central spinal stenosis at L4-L5 do appear at least slightly more prominent."  (Dkt.

8-8, Pg ID 317-18).

The ALJ also properly noted that while complaints of shoulder pain are

documented in the record, a diagnosis of a left rotator cuff tear is not documented

in the treating record and there is no evidence of pain or other loss of function that

would preclude plaintiff from working.  (Dkt. 8-2, Pg ID 50-51).  Rather, Dr.

Homer Linard III, noted that an MRI indicates the possibility of a labral tear and

some tendinosis in the rotator cuff, diagnosed plaintiff with an "[i]mpingement

syndrome left shoulder," and noted on examination a good range of motion and

strength. (Dkt. 8-7, Pg ID 185-87).

The ALJ also reviewed the findings of Abigail Lynn Neal, M.D., who conducted a consultative examination of plaintiff on December 15, 2009. (Dkt. 8-7, Pg ID 234-38). The ALJ noted that Dr. Neal reached her conclusions in large part by relying on plaintiff's self-reported history, and those conclusions are not supported by the medical record evidence which show no evidence of continued chest pain, no diagnosis of rotator cuff tear and more controlled blood sugar levels. (Dkt. 8-2, Pg ID 51). On exam, Dr. Neal noted that plaintiff's lungs were clear with no wheezes, rales or rhonchi, plaintiff had full strength in his upper and lower extremities, grossly intact sensation, negative straight leg raise, normal gait, and is able to walk on his heels and tip toes, but is slow to sit up from a laying down position, slow to get in and out of a chair, and able to squat 1/4 of the way with difficulty standing back up. (Dkt. 8-7, Pg ID 234-38).

Because Dr. Knight's conclusions are largely inconsistent with her medical notes and the medical record as a whole, the ALJ did not err when he did not give controlling weight to Dr. Knight's opinion regarding plaintiff's limitations.

### b.     The ALJ's RFC finding

Plaintiff also argues that the ALJ's RFC finding is in error because the only RFC assessment in the record was completed by a layperson single decisionmaker and not a physician. "[A] SDM is not a medical professional of any stripe, and a

finding from such an individual is entitled to no weight as a medical opinion, or to consideration as evidence from other non-medical sources." *Botton v. Astrue*, 2008 WL 2038513 (M.D. Fla. May 12, 2008). Although the ALJ does not indicate in his opinion that he relies on the single decisionmaker's RFC assessment in reaching his RFC finding, there is no state agency medical opinion on which the ALJ could have relied and the medical source statement from plaintiff's treating physician is substantially more limited than that found by the ALJ. The undersigned acknowledges the Commissioner's argument that the ALJ properly made his RFC finding by reviewing the medical evidence in the record, which the Commissioner contends supports the ALJ's finding that plaintiff retained the ability to perform a range of work subject to exertional, postural and environmental restrictions, at the light or sedentary level. In any event, because the case is being remanded on other grounds, the Commissioner will have the opportunity to obtain a medical opinion on plaintiff's RFC.

### c.    Vocational expert testimony

Plaintiff argues that because the ALJ's RFC finding is flawed, the hypothetical question posed to the VE, based on that flawed RFC, cannot be deemed to be supported by substantial evidence. As discussed above, on remand, the Commissioner will have an opportunity to obtain a medical opinion on plaintiff's RFC and obtain additional VE testimony based upon that RFC finding

on remand.  Plaintiff also argues that the VE's testimony is not consistent with the DOT and thus cannot provide substantial evidence for the ALJ.  However, the Sixth Circuit has held that "the ALJ and consulting vocational experts are not bound by the [DOT] in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's classifications." *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (holding that the ALJ did not err in evaluating the testimony of a VE when the VE testified that skilled occupations were available to an unskilled claimant) (citing *Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995)). The Sixth Circuit has explained that because "not all occupations are included in the DOT and the VE may use terminology that differs from the terms used in the DOT . . . the mere fact that the DOT does not list occupations with those precise terms does not establish that they do no exist." *Beinlich v. Comm'r of Soc. Sec.*, 345 Fed. Appx. 163, 168 (6th Cir. 2009); *see also* SSR 00-4p ("The DOT contains information about most, but not all, occupations."). "[N]either the DOT or [the VE's testimony] automatically trumps when there is a conflict." *Wright*, 321 F.3d at 616; SSR 00-4p. Thus, the fact that the job titles to which the VE testifies does not line up perfectly with the DOT does not render the VE's testimony inconsistent with the DOT as a whole. *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009).

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

35

objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc. If the Court determines that any objections are without merit, it may

rule without awaiting the response.


Date: 2/28/2013 s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on 2/28/2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Randall E. Phillips, Judith E. Levy, AUSA, and the Commissioner of Social Security.

s/Darlene Chubb
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov

36